IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORG PORTFOLIO MANAGEMENT LLC, an Ohio Limited Liability Company, and IRONWOOD REAL ESTATE, LLC. a Georgia Limited Liability Company,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>URBAN RETAIL PROPERTIES, LLC f/k/a URBAN RETAIL PROPERTIES CO., a Delaware Limited Liability Company,<br><br>　　　　　Defendants. | Case No.  08 C 80<br><br>Judge Shadur<br>Magistrate Judge Keys<br><br>**JURY DEMANDED** |

### SUPPLEMENTAL COMPLAINT FOR DECLARATORY RELIEF AND MONETARY RELIEF

Now come plaintiffs ORG Portfolio Management LLC ("ORG") and Ironwood Real Estate, LLC ("Ironwood") (ORG and Ironwood, collectively "Plaintiffs"), and for their Supplemental Complaint against Urban Retail Properties, LLC fka Urban Retail Properties Co. ("Urban" or "Defendant"), filed pursuant to this Court's Memorandum Order dated January 7, 2008, allege as follows:

### JURISDICTION AND VENUE

1.　　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2.　　　Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## PARTIES

3.  ORG is a limited liability company organized and existing under the laws of the State of Ohio, with its principal office and place of business located at 3733 Park East Drive, Suite 210, Beachwood, Ohio 44122. ORG's sole members are ORG Holdings, Limited and Steven Gruber ("Gruber"). ORG Holdings, Limited is an Ohio limited liability company with its principal office and place of business in Ohio, and its sole members are Jonathan Berns and Edward Schwartz, both of whom are citizens and residents of the State of Ohio. Gruber is a citizen and resident of the State of Georgia. ORG is in the business of providing real estate financial consulting services to pension plans and others.

4.  Ironwood is a limited liability company organized and existing under the laws of the State of Georgia, with its principal office and place of business located at 3715 Northside Parkway, Building 200, Suite 500, Atlanta, Georgia 30327. The sole members of Ironwood are Joel Shapiro, Gordon Jones, Bill Boden and David Zell, who are all citizens and residents of the State of Georgia. Ironwood is in the business of providing financial and other consulting services.

5.  Based upon information provided by Urban's counsel, Plaintiffs are informed and believe that (a) Urban is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Illinois, (b) Urban has two (2) members, (c) one of Urban's members is URP Holdings, LLC, a Delaware limited liability company that has its principal place of business in Illinois, (d) URP Holdings, LLC's members are Ross Glickman and Len Tobiaski, who are both citizens and residents of Illinois, (e) Urban's other member is RAIT Urban Holdings,

LLC, a Delaware limited liability company that has its principal place of business in Pennsylvania, (f) RAIT Urban Holdings, LLC's sole member is RAIT Partnership, LP, a Delaware limited partnership that has its principal place of business in Pennsylvania, and (g) RAIT Partnership, LP's general partner is RAIT General, Inc., a Maryland corporation that has its principal place of business in Pennsylvania, and its limited partner is RAIT Limited, Inc., a Maryland corporation that has its principal place of business in Pennsylvania. Accordingly, there is complete diversity between Plaintiffs and Defendant.

6. Urban is in the business of developing, owning, leasing and managing shopping centers and mixed use real estate developments throughout the United States.

## FACTUAL BACKGROUND

7. In or about August 2006, Urban's Chairman and Chief Executive Officer, Ross B. Glickman ("Glickman"), contacted Ironwood seeking assistance to identify and introduce Urban to institutional and similar investors that might provide funds for the purchase, development and ownership by Urban and/or its affiliates of shopping centers and mixed use real estate developments throughout the United States. Shortly thereafter, Ironwood contacted ORG to assist in its effort to locate identify and introduce Urban to such investors.

8. Beginning in August 2006, Ironwood and ORG commenced joint efforts to communicate with representatives of Urban in order to gather information necessary to identify such investors and introduce Urban to them, with the reasonable expectation of receiving compensation from Urban therefor. During such communications, Glickman stated to Plaintiffs that Urban was seeking capitalization totaling $1 billion or more,

3

including equity of $200 to 400 million, for proposed developments to be owned by Urban and/or its affiliates at market rates of return, and that it was seeking investors that were willing to not only fund the purchase, development and ownership of shopping centers and mixed use real estate properties, but also to hold those investments for extended periods of time. Glickman also stated that finding such investors was critical to Urban because Urban intended to lease and manage the properties developed with the assistance of the funds sought and would generate substantial income both from its development activities and from its leasing and management activities. As such, Urban was not seeking investors who were merely interested in assisting in funding the development of shopping centers and mixed use properties and then promptly selling those properties, nor was it seeking investors who were interested in investing long term in existing properties, either of which would be considerably easier to locate than the investors Urban was seeking. Glickman also revealed during his communications with Plaintiffs that Urban had been searching, unsuccessfully, for investors meeting its criteria since early 2006. Finally, Glickman stated that in addition to seeking investors to fund the purchase, development and ownership of shopping centers and mixed use properties, Urban also was seeking to raise working capital from one or more investors to assist in the financing of the operations of Urban.

9. Commencing soon after their initial communications with Glickman in August 2006, and with the reasonable expectation of receiving compensation from Urban therefor, Plaintiffs jointly utilized their extensive knowledge of the real estate investment industry to identify potential investors meeting Urban's criteria to fund the purchase, development and ownership of shopping centers and mixed use real estate properties and,

4

using their contacts within that industry, engaged in communications with representatives of those potential investors to gauge their interest in investing on the terms set forth by Urban. Ultimately, Plaintiffs identified a number of potential investors that indicated they might be interested in funding developments like those proposed by Urban on terms substantially similar to those identified to Plaintiffs by Urban.

10. Among the potential investors that indicated such interest was California State Teachers' Retirement System ("CalSTRS") and its real estate portfolio manager, Principal Financial Group ("Principal") (CalSTRS and Principal, collectively "CalSTRS/ Principal"). Plaintiffs reported to Urban CalSTRS/Principal's interest in investing and proposed to both Urban and CalSTRS/Principal that a meeting of representatives of Plaintiffs, Urban and CalSTRS/Principal be held to introduce the representatives of Urban and CalSTRS/Principal to each other to facilitate direct discussions between them regarding the prospect of CalSTRS/Principal funding real estate projects developed and/or owned by Urban or affiliates of Urban.

11. During discussions regarding the scheduling of that meeting, ORG, jointly on behalf of Plaintiffs, asked Glickman about Urban's intention to compensate Plaintiffs as the "finder" in the event that Plaintiffs introduced Urban to one or more investors that funded Urban's proposed developments. Glickman, acting on behalf of Urban, agreed and promised that in such event Urban would compensate Plaintiffs at the market rate for their services. The market rate fee for services like those provided to Urban by Plaintiffs is typically four percent (4%), more or less, of the funds provided by the investor located and introduced to the owner or developer by the "finder," whether such funds were provided as debt or equity. With respect to Urban's efforts to raise working capital from

5

one or more investors to assist in the financing of the operations of Urban, Plaintiffs advised that Urban would be better positioned to raise such funds after investors in Urban's proposed developments were secured and that funds committed for such purpose could then be leveraged to raise greater sums for the operations of Urban.

12. Solely in consideration of Urban's assurance that Plaintiff's would be compensated as the "finder" in the event that Plaintiffs introduced Urban to one or more investors that funded Urban's proposed developments, Plaintiffs jointly scheduled a meeting between representatives of Plaintiffs, Urban and CalSTRS/Principal to be held at Urban's offices on November 1, 2006, and thereafter continued to engage in communications with representatives of Urban and CalSTRS/Principal regarding CalSTRS/Principal providing funds for Urban's proposed real estate developments. Additionally, Urban and CalSTRS/Principal directly communicated regarding CalSTRS/Principal providing such funds.

13. Upon information and belief, Plaintiffs' joint efforts on behalf of Urban culminated with Urban and CalSTRS/Principal's formation of a joint venture called UrbanCal LLC, to which CalSTRS/Principal has contributed $200 million and agreed to contribute up to an additional $300 million (the "Joint Venture") to fund the development and/or ownership of shopping malls and/or other real estate assets. Upon information and belief, the funds provided and to be provided to Urban by CalSTRS/Principal in conjunction with the Joint Venture will be used to provide total capitalization of $1.5 billion for developments owned or to be owned in conjunction with the Joint Venture. Moreover, upon information and belief, Urban has leveraged the funds committed to the Joint Venture by CalSTRS/Principal in order to sell a 25% interest in Urban to RAIT

Financial Trust, with the capital raised by such sale to be used, in whole or in part, for the operations of Urban. Upon information and belief, RAIT Financial Trust also has agreed to provide Urban with additional project financing.

14. Urban repeatedly has acknowledged that Plaintiffs are entitled to a fee for their services as herein described, and did so in an email message sent by Glickman to Ironwood on February 6, 2007, stating in relevant part:

> "…it is our intention as well to make this a win win situation. We certainly appreciate the introduction to [ORG] and subsequently to Principal. The issue is not the acknowledgment of a commission but the presumption of the amount. Which if calculated at a "market" rate of two percent based on equity that Calstrs would supply, could very well amount to seven and eight figures. All this for the introduction. We agree that a finders fee of some type is due…. Yes all the doors were opened. We agree with this."

Notwithstanding Urban's acknowledgment that it owes Plaintiffs a fee for their services as herein described, disputes exist between the parties regarding the amount of the fee due Plaintiffs, and Urban has refused to pay Plaintiffs a market rate fee as set forth herein.

## COUNT I

15. Plaintiffs restate and incorporate the allegations set forth above as though the same were fully rewritten herein.

16. Real controversies exist between the parties, which are justiciable and for which relief is necessary with respect to a declaration: (a) of the fee due Plaintiffs, and (b) that the payment of such fee is due upon CalSTRS/Principal's transmittal of funds constituting debt or equity financing to Urban, the Joint Venture and/or any other business venture with which Urban or the Joint Venture is affiliated, plus interest.

## COUNT II

17. Plaintiffs restate and incorporate the allegations set forth above as though the same were fully rewritten herein.

18. Urban is in default of its contract with Plaintiffs by failing and refusing to pay Plaintiffs jointly the fee to which the parties agreed for the services rendered by Plaintiffs to Urban. Upon information and belief, such fee is, or will be upon CalSTRS/Principal's investment of the entire sum that it has agreed to provide the Joint Venture, four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

19. Plaintiffs are entitled to judgment against Urban in an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

## COUNT III

20. Plaintiffs restate and incorporate the allegations set forth above as though the same were fully rewritten herein.

21. Urban promised Plaintiffs that in the event Plaintiffs introduced Urban to one or more investors that funded Urban's proposed developments as set forth herein, Urban would compensate Plaintiffs at the market rate for their services. Such promise should have been reasonably expected to induce Plaintiffs to introduce Urban to

prospective investors in Urban's proposed developments and did in fact induce Plaintiffs to do so as set forth herein, as a direct consequence of which Urban and CalSTRS/Principal's formed the Joint Venture, in which CalSTRS/Principal has invested $200 million and agreed to contribute up to an additional $300 million.

22. As a consequence, Plaintiffs are entitled to judgment against Urban in an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

## COUNT IV

23. Plaintiffs restate and incorporate the allegations set forth above as though the same were fully rewritten herein.

24. Urban has been unjustly enriched by Plaintiffs jointly, by an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

25. In the event that it is determined that no contract exists between Plaintiffs and Urban, Urban has been unjustly enriched by Plaintiffs jointly, by an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

26. Plaintiffs are jointly and severally entitled to judgment against Urban in an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest.

WHEREFORE, Plaintiffs pray for the following relief:

A. For Count One, a declaration that Urban is obligated to pay Plaintiffs jointly and severally a fee equal to four percent (4%) of any and all sums that CalSTRS/Principal provides to Urban, the Joint Venture and/or any other business venture with which Urban or the Joint Venture is affiliated as debt or equity financing, such amount to be due at the time such time as CalSTRS/Principal provides such sum to Urban, the Joint Venture and/or any other business venture with which Urban or the Joint Venture is affiliated;

B. For Counts Two, Three and Four, judgment against Defendants in an amount equal to four percent (4%) of the sums provided at any time by CalSTRS/Principal as debt or equity financing for real estate projects developed and/or owned by Urban, the Joint Venture, and/or affiliates of Urban, which amount is anticipated to be no less than $20,000,000, plus interest; and

C. Plaintiffs' reasonable attorney's fees, costs, pre- and post-judgment interest and such other relief as this Court may deem just and proper.

## **JURY DEMANDED**

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

*[signature]*

Peter Sonderby
Kenneth F. Berg
Ulmer & Berne LLP
One North Franklin Street, Suite 1825
Chicago, Illinois 60606-3401
Telephone: (312) 324-8000
Facsimile: (312) 324-8001
psonderby@ulmer.com
kberg@ulmer.com
*Attorneys for Plaintiffs*

Of Counsel:
Jordan Berns
  (Ohio Supreme Court Registration No. 0047404)
Paul M. Greenberger
  (Ohio Supreme Court Registration No. 0030736)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Telephone: (216) 831-8838
Facsimile: (216) 464-4489
jberns@bernsockner.com
pgreenberger@bernsockner.com

1684475v1
32613.00000