IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

ORG PORTFOLIO MANAGEMENT LLC,      )
an Ohio Limited Liability Company, and      )
IRONWOOD REAL ESTATE, LLC, a      )
Georgia Limited Liability Company,      )
                                           )
                    Plaintiffs,      )
                                           )
v.                                         )    Case No. 08 C 80
                                           )
URBAN RETAIL PROPERTIES, LLC      )    Judge Shadur
fka URBAN RETAIL PROPERTIES CO.,      )    Magistrate Judge Keys
a Delaware Limited Liability Company,      )
                                           )
                    Defendant.      )

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO DISMISS

In its zeal to dispose of this matter and thereby avoid paying the fee it has acknowledged

in writing is due Plaintiffs, Defendant Urban Real Estate, LLC ("Urban") has filed a Motion to

Dismiss (the "Motion") that mischaracterizes Plaintiffs' successful effort to locate a source of

funds for Urban as "a transaction 'intended to result in the sale ... of real estate ....'" Motion, p.

1, and Defendant's Memorandum in Support of its Motion to Dismiss ("Memorandum in

Support"), pp. 3-4.[1]

As grounds for its Motion, Urban contends in substance that, as a matter of law, a party

engaged to identify and introduce potential sources of funds to another cannot recover a fee for

doing so if the funds provided by such sources may ultimately be used in future transactions

resulting in the purchase, development or ownership of real estate unless the party so engaged is

---

[1]    As detailed *infra* at pp. 4-5, Urban misattributes the language it quotes so that it appears
Plaintiffs alleged in their Complaint that their actions were "intended to result in the sale of ...
real estate."  The Complaint includes no such allegation.

licensed as a "broker" under the Illinois Real Estate Licensing Act of 2000 (the "Act").

Applying the Act as Urban proposes would be inconsistent with both the Act and its stated

purpose. Indeed, Urban advocates a reading of the Act so broad that it would require licensure

under the Act for anyone providing services involving the procuring of "prospects" of any kind

or nature to one who is ultimately seeking to sell, purchase or lease real estate. This would

include not only those who, like Plaintiffs, have assisted those in the real estate business in

procuring sources of funds, but also employment recruiters, or "headhunters" (who assist

companies like Urban in procuring "prospective" employees to aid them in the purchase,

development and ownership of real estate), construction managers (who assist companies like

Urban in procuring "prospective" contractors to perform construction work in connection with

the purchase, development and ownership of real estate), and banks and loan brokers (who assist

companies like Urban in procuring "prospective" loans to finance the purchase, development and

ownership of real estate). Urban's expansive reading of the Act both unsupported and

unsupportable, and Urban's Motion should be denied.

## I.    FACTUAL ALLEGATIONS

For purposes of Urban's Motion, the relevant factual allegations set forth in the

Complaint are as follows:

1. "In or about August 2006, Urban's Chairman and Chief Executive Officer, Ross B. Glickman ("Glickman"), contacted [plaintiff Ironwood Real Estate, LLC ("Ironwood")] **seeking assistance to identify and introduce Urban to institutional and similar investors** that might provide funds for the purchase, development and ownership by Urban and/or its affiliates of shopping centers and mixed use real estate developments throughout the United States." Complaint, ¶7 (emphasis added).

2. "Commencing soon after their initial communications with Glickman in August 2006, and with the reasonable expectation of receiving compensation from Urban therefor, **Plaintiffs jointly utilized their extensive knowledge of the real estate investment industry to identify potential investors** meeting Urban's criteria to fund the

purchase, development and ownership of shopping centers and mixed use real estate properties." Complaint, ¶9 (emphasis added).

3. **"Ultimately, Plaintiffs identified a number of potential investors** that indicated they might be interested in funding developments like those proposed by Urban on terms substantially similar to those identified to Plaintiffs by Urban. Complaint, ¶9 (emphasis added).

4. **Among the potential investors that indicated such interest was California State Teachers' Retirement System ("CalSTRS") and its real estate portfolio manager, Principal Financial Group ("Principal") (CalSTRS and Principal, collectively "CalSTRS/ Principal").** Complaint, ¶10 (emphasis added).

4. **Solely in consideration of Urban's assurance that Plaintiffs would be compensated as the "finder" in the event that Plaintiffs introduced Urban to one or more investors that funded Urban's proposed developments, Plaintiffs jointly scheduled a meeting between representatives of Plaintiffs, Urban and CalSTRS/Principal ....."** Complaint, ¶12 (emphasis added).

5. "Upon information and belief, **Plaintiffs' joint efforts on behalf of Urban culminated with Urban and CalSTRS/Principal's formation of a joint venture called UrbanCal LLC, to which CalSTRS/Principal has contributed $200 million and agreed to contribute up to an additional $300 million (the "Joint Venture")** to fund the development and/or ownership of shopping malls and/or other real estate assets." Complaint, ¶13 (emphasis added).

As set forth above and in the Complaint, Plaintiffs *do not* allege that either Urban or anyone introduced by Plaintiffs to Urban has purchased, sold, exchanged or leased any interest in real estate as a consequence of Plaintiffs' acts. Rather, Plaintiffs have alleged that, after introducing Urban to CalSTRS/Principal, Urban and CalSTRS/Principal created "a joint venture called UrbanCal LLC, to which CalSTRS/Principal has contributed $200 million and agreed to contribute up to an additional $300 million." Complaint, ¶5. Neither Urban nor CalSTRS/Principal acquired an interest in real estate in that transaction, but instead acquired membership interests in a limited liability company (personal property under Illinois law) and thereafter contributed funds to that limited liability company. Whether those funds were used by that limited liability company (or any other entity) for the purchase, sale, exchange or lease of

any interest in real estate is not alleged, nor are Plaintiffs' claims dependant upon the use of those funds in any real estate transaction. Indeed, allegations indicating the purpose for which Urban sought funds are mere surplusage included in the Complaint merely to provide context and are irrelevant to the gravamen of the claims asserted in the Complaint. *Coilcraft, Inc. v. Inductor Warehouse*, 1998 U.S. Dist. LEXIS 3085, *2 (N.D. Ill. March 16, 1998). As such, those allegations could be omitted from the Complaint and Plaintiffs' claims still would stand.[2]

In its eagerness to convince this Court to dismiss the Complaint, Urban misattributes and misstates allegations of the Complaint quoted above. For instance, in both its Motion (p. 1) and Memorandum in Support (pp. 3-4), Urban states that Plaintiffs seek a fee for introducing Urban "to a prospective investor in a transaction 'intended to result in the sale ... of real estate,' through the formation of a joint venture with defendant to purchase 'shopping malls and/or other real estate assets'" (elipses in original), attributing (in its Memorandum in Support) the quoted language to a number of paragraphs in Plaintiffs' original Complaint and Supplemental Complaint. However, the "intended to result ..." language quoted by Urban does not appear in the Complaint and instead is quoted from 225 ILCS 454/1-10(8). While language similar to the "shopping malls and/or other real estate assets" language appears throughout the Complaint, the quoted language appears only in paragraph 13, and Urban tellingly has deleted from its quote the words that immediately precede it: "*to fund the development and ownership of* shopping malls and/or other real estate assets." (Emphasis added.) Thus, despite Urban's implication to the contrary, Plaintiffs have not alleged that funds contributed to the limited liability company formed by Urban and the source of funds to which Plaintiffs introduced it were to be used to

---

[2]     Accordingly, if this Court were to determine that the inclusion of these allegations somehow subjects Plaintiffs' claims to the Act, then Plaintiff would respectfully seek leave to amend the Complaint to omit them.

fund the **purchase** of real estate by that or any other entity, but instead alleged that the entity introduced by Plaintiffs to Plaintiffs ultimately contributed money to that limited liability company "to fund the development and ownership of shopping malls and/or other real estate assets." Complaint, ¶13. Development and ownership of real estate do not necessarily equate with the purchase of an interest in real estate, although they may follow it.

When Urban's mischaracterizations of Plaintiffs' allegations and the applicable law are stripped away, it is clear that Urban's Motion to Dismiss should be denied.

## II.    LAW AND ARGUMENT

Even after the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), this Court still must, for purposes of consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "assume all well-pleaded allegations in the complaint are true and draw all reasonable inferences in the plaintiffs' favor." *Estate of Sims v. County of Bureau*, 506 F.3d 509, 512 (7th Cir. 2007) (citations omitted).[3]  Doing so here dictates that Urban's Motion should be dismissed.

---

[3]    Following the Supreme Court's decision in *Bell Atlantic*, the Court of Appeals also confirmed that only notice pleading is required and "admonished that '[a]ny district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain . . ." should stop and think: What rule of law *requires* a complaint to contain that allegation?'" *Lang v. TCF Nat'l Bank*, 2007 U.S. App. LEXIS 22588, *5-6 (7th Cir. September 20, 2007) (quoting *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)) (emphasis in original).  To the extent that Urban bases its Motion on Plaintiffs' failure to allege that they have Illinois real estate broker's licenses (Motion, p.1), it has failed to follow this admonition.  While some other jurisdictions' statutes regarding real estate licensing mandate such an allegation (*see, e.g.*, N.Y. Real Prop. Law §442-d, Ohio Rev. Code §4735.21, D.C. Code §45-1926(c), MCL §339.2512a, and § 339.160 R.S.Mo), the Act includes no such requirement and dismissal on grounds of its omission would be inappropriate.

A.    **The Services Upon Which Plaintiffs Base Their Claims Are Not Within the Act**.

Contrary to Urban's contention, Plaintiffs' services alleged in the Complaint are not within the Act's delineation of those that can only be performed for compensation by a "broker." While Urban contends in its Motion that the Act "bars payment of a finder fee to, and recovery of a finder fee by, an unlicensed person or entity **for *introducing a prospective investor*** in a transaction 'intended to result in the sale ... of real estate'" (Motion, p.1 (emphasis added)), this is a misstatement of the Act. Rather, the definition of "broker" in Section 1-10 of the Act, 225 ILCS 454/1-10, includes one "... who for another and for compensation, or with the intention or expectation of receiving compensation, either directly or indirectly: ... (8) [a]ssists or directs in procuring or referring of prospects, intended to result in the sale, exchange, lease, or rental of real estate" (emphasis added). Urban would have this Court believe that "prospects" is defined by the Act to include prospective sources of funds whose funds are contributed to a limited liability company and may ultimately be used "to fund the development and/or ownership of shopping malls and/or other real estate assets." Complaint, ¶13. However, the Act includes *no* definition of "prospect."

Nonetheless, read in context with the balance of 225 ILCS 454/1-10, it is apparent that 225 ILCS 454/1-10(8) addresses circumstances in which one, "assists or directs in procuring or referring of prospects, intended to result in the sale, exchange, lease, or rental of real estate" ***to or by those very prospects***. This is confirmed by the use of derivations of the term "prospect" elsewhere in the Act. *See, e.g.*, 225 ILCS 454/5-20(10) (exempting from licensing requirements, in certain specified circumstances, resident lessees who refer "***prospective lessees*** of dwelling units in the same building" (emphasis added)); 225 ILCS 454/5-20(12) (exempting from licensing requirements, in certain specified circumstances, a timeshare owner who "refers

*prospective purchasers*" (emphasis added)); 225 ILCS 454/15-15(a)(2)(b) (stating that a licensee does not breach a duty under the Act by showing alternative properties to "*prospective buyers or tenants*" or by showing properties in which a client is interested "to *other prospective buyers or tenants*" (emphasis added)); 225 ILCS 454/15-25(a) (providing that "[a] licensee engaged by a seller client shall timely disclose to customers who are *prospective buyers* all latent material adverse facts pertaining to the physical condition of the property" known by the licensee (emphasis added)). It also is consistent with the concept "that the essential feature of the broker's employment is in bringing the buyer and seller together for the purpose of effecting a sale." *Sunny Ridge Realty and Ins., Inc. v. Williamson*, 74 Ill. App. 3d 481, 484 (2nd Dist. 1979).

Sunny Ridge* is instructive in this regard. There, a broker's association ("National") sought a commission in connection with the sale of farm property listed by a licensed real estate broker ("Sunny Ridge"), with which National had a "membership agreement." Under the membership agreement, Sunny Ridge was required to submit listings for nonresidential real estate to National so that National could feature them in a videotape of available properties distributed to other broker-members of Sunny Ridge's association, in exchange for which National was to receive a commission. After one of the properties listed by Sunny Ridge sold, National sought its commission. Sunny Ridge contended that National was barred from recovering a commission under the former version of the Act because it was not a "broker." The court disagreed:

> Under the circumstances, we are of the opinion that the services which National agreed to perform pursuant to the membership contract do not constitute the activities of a "broker" within either the letter or the spirit of [the former version of 225 ILCS 454/1-10] of the Act. **The promotional videotapes were not used by National to interest *a prospective purchaser* in the sale of listed property**; …

*Id.* at 485-86 (emphasis added).  In words equally applicable to the instant matter, the court

concluded "*the broker's benchmark – the bringing together of a prospective buyer and a ready*

*and willing seller with a view towards completing a sale – is wholly absent here.*"  *Id.* at 486

(emphasis added).

As in *Sunny Ridge*, the "broker's benchmark" is absent in the instant matter.  Plaintiffs do

not allege in the Complaint that they introduced Urban to a prospective buyer, seller, lessor or

lessee of real estate.  Rather, Plaintiffs allege that they introduced Urban to CalSTRS/Principal

which ultimately formed a limited liability company with Urban "to which CalSTRS/Principal

has contributed $200 million and agreed to contribute up to an additional $300 million."

Complaint, ¶13.  Clearly, this transaction does not exhibit the "broker's benchmark" as it does

not even remotely involve the bringing together of parties as prospective buyers, sellers, lessors

or lessees of real estate.  In short, the "prospect" introduced to Urban by Plaintiffs was not the

kind of prospect referenced in the Act.

The express legislative intent of the Act further confirms that Plaintiffs' acts forming the

basis of their Complaint are not within the purview of the Act.  225 ILCS 454/1-5 states:

> § 1-5. Legislative intent.  The intent of the General Assembly in enacting this
> statute is to evaluate the competency of persons engaged in the real estate
> business and to regulate this business for the protection of the public.

Plaintiffs' efforts to identify and introduce to Urban potential sources of funds hardly can be

described as the activities of "persons engaged in the real estate business," nor could the duties

imposed upon "brokers" under the Act affect the services provided to Urban by Plaintiffs as

alleged in the Complaint.  This is underscored by the "Educational Requirements to Obtain a

Broker's or Salesperson's License" set forth in 68 Ill. Adm. Code §1450.276, mandating that all

applicants for broker's licenses have 120 credit hours in courses involving real estate, including

courses in real estate transactions, brokerage, contracts and conveyance, appraisal, property

management, financing, sales and brokerage, farm property management and real property

insurance. None of these courses are related in any way to the services Plaintiffs provided to

Urban. *See, e.g., Turner Holdings, Inc. v. Howard Miller Clock Co.*, 657 F. Supp. 1370

(W.D.Mich. 1987) (investment banker's activities "are clearly not within the ambit of a 'real

estate broker regulation.' This conclusion is supported by the real estate licensing requirements

provided for in the Act. They are not, in any way, related to the services which investment

bankers perform").

Like the services provided by an investment banker (*Id.*), a financial advisor (*Prudential*

*Securities Inc. v. Norcom Dev.*, 1999 U.S. Dist. LEXIS 6711, *7 (S.D.N.Y. May 11, 1999), or an

employment recruiter engaged to assist a company like Urban in procuring employees to aid it in

the sale, lease or rental of real estate, the services alleged to have been provided by Plaintiffs to

Urban were not rendered in connection with a real estate transaction. Rather, any real estate

transaction in which the limited liability company formed by Urban and CalSTRS/Principal may

have engaged after Plaintiffs completed performance of their services would have been wholly

separate and independent from the provision of those services. While brokers licensed under the

Act may have participated in any such real estate transactions, no broker's license was required

to assist Urban in locating sources of funds that ultimately may have been used in such real

estate transactions.

**B.**     **No Interest In Real Estate Was Effected By Plaintiffs' Actions.**

At best, as a result of Plaintiffs' introduction of Urban to CalSTRS/Principal, Urban and

CalSTRS/Principal each acquired an interest in a limited liability company to which

CalSTRS/Principal provided funds. By statute, an interest in a limited liability company is

personal property, not real estate. 805 ILCS 180/30-1 ("A distributional interest[4] in a limited

liability company is personal property"). Indeed, the Illinois Supreme Court has held that even a

certificate of purchase for delinquent real estate that may ripen into a tax deed is not an interest

in real estate, and that one who buys and sells such certificates of purchase is not engaged in the

purchase and sale of real estate under a former version of the Act's definition of "broker."

*People ex rel. Department of Registration & Education v. D. R. G., Inc.*, 62 Ill. 2d 401, 406

(1976). If the purchase and sale of instruments that may ripen into an interest in real estate do

not implicate the Act, then it is unfathomable that Plaintiffs have engaged in activities requiring a

broker's license under the Act by introducing Urban to a source of funds that formed a limited

liability company with Urban and contributed funds to that limited liability company, even if

those funds might subsequently have been in real estate transactions.

    *J.H. Chapman Group, Ltd. v. Pita Baking Company*, 205 Ill. App. 3d 1031 (1st Dist.

1990), underscores the distinction between those transactions requiring a license under the Act

and those related transactions that do not. There, Chapman Group (a business broker that was

not licensed as a broker under the former version of the Act) was engaged to find a purchaser for

a pita baking business owned by Pita. Chapman Group found a purchaser, DCA. While no real

estate interests were to be acquired as part of the purchase of Pita's business, the purchase was

contingent on DCA obtaining a lease for the property where Pita had operated its business.

Chapman Group played no role in obtaining that lease. After the sale of the business was

completed, Pita refused to pay Chapman Group's commission, arguing that Chapman Group

could not recover compensation for its services because it was not licensed as a broker under the

---

[4]     As set forth in the Notes to 805 ILCS 180/30-1, this section was revised in 1997 to insert
the words "distributional interest" in place of "membership interest."

former version of the Act. Analogous to Urban's argument here, Pita argued that the Act applied because Chapman Group knew that DCA would need to negotiate a lease with Pita's landlord to complete its purchase of Pita's business and that the Act "be broadly applied to prohibit an unlicensed person from recovering compensation for brokering any transaction that involves *any* real estate interest." *Id* at 1033 (emphasis in original). The court was unpersuaded:

> Pita fails to explain how a broker's license held by Chapman Group could have benefited lease negotiations that DCA undertook on its own behalf with another third party, where Chapman Group was utterly unconnected to negotiations, and the negotiations involved no real estate interest belonging to Pita. **The mere knowledge that a party to a brokered transaction may conduct ancillary transactions with a third party involving its own real estate interests is not sufficient, absent any connection with the broker to the ancillary transaction, to bar an unlicensed broker from collecting his commission.**

*Id.* at 1034 (emphasis added).[5]

As in *Chapman Group*, "[t]he mere knowledge" that Urban "may conduct ancillary transactions with a third party involving its own real estate interests is not sufficient, absent any connection with the broker to the ancillary transaction, to bar an unlicensed broker from collecting his commission." Indeed, if the real estate transaction upon which the brokered transaction in *Chapman Group* was contingent was "ancillary" to that brokered transaction, any real estate transactions in which the limited liability company formed by Urban and CalSTRS/Principal uses the funds contributed by CalSTRS/Principal are wholly separate from the services that form the basis for Plaintiffs' claims. Here, Plaintiffs allege no connection to any real estate transaction – ancillary or otherwise -- in which the funds provided by

---

[5]    Interestingly, months after their first agreement, Chapman Group and Pita entered into a separate agreement pursuant to which Chapman Group agreed, for a $10,000 commission, to find Pita a new facility for its gyros manufacturing operation and renegotiate that operation's existing lease. Not surprisingly, the court upheld the denial of Chapman Group's claim for the commission under that separate agreement on grounds that the former version of the Act barred an unlicensed person or entity from recovering such a commission.

CalSTRS/Principal were used.  Consequently, the Act does not bar Plaintiffs from recovering the fee they seek in their Complaint.

### III.    CONCLUSION

As set forth in the Complaint, Plaintiffs introduced Urban to a source of funds in exchange for the promise of compensation.  The funds supplied by the entity that Plaintiffs introduced to Urban were contributed to a limited liability company formed by Urban and the entity introduced by Plaintiffs in a transaction effecting, at best, the transfer of interests in personal property.  Whether those funds were subsequently used by that limited liability company in a real estate transaction is not alleged in the Complaint and is irrelevant to Plaintiffs' claims.  Rather, Plaintiffs' claims are based solely on their successful effort to introduce Urban to the source of those funds.  To prevent Plaintiffs from recovering the compensation promised to them by Urban on grounds that Plaintiffs are not licensed as "brokers" under the Illinois Real Estate Licensing Act of 2000 is to ignore the terms and express legislative intent of that Act and the body of law governing real estate licensing requirements in Illinois and throughout this nation.  Urban's efforts to recast Plaintiffs' services as those governed by the Act should be rejected, and its Motion to Dismiss should be denied.

Respectfully submitted,

Peter Sonderby
Kenneth F. Berg
Ulmer & Berne LLP
One North Franklin Street, Suite 1825
Chicago, Illinois 60606-3401
Telephone: (312) 324-8000
Facsimile: (312) 324-8001
psonderby@ulmer.com
kberg@ulmer.com

Jordan Berns
  (Ohio Supreme Court Registration No. 0047404)
Paul M. Greenberger
  (Ohio Supreme Court Registration No. 0030736)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Telephone: (216) 831-8838
Facsimile: (216) 464-4489
jberns@bernsockner.com
pgreenberger@bernsockner.com

*Attorneys for Plaintiffs*

1690527v1
32613.00000