IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ORG PORTFOLIO MANAGEMENT LLC, an Ohio Limited Liability Company, and IRONWOOD REAL ESTATE, LLC, a Georgia Limited Liability Company, ) ) ) ) ) | |
| Plaintiffs, ) ) | No. 08 C 80 |
| v. ) ) | Judge Shadur |
| URBAN RETAIL PROPERTIES, LLC f/k/a URBAN RETAIL PROPERTIES CO., a Delaware Limited Liability Company, ) ) ) ) | Magistrate Judge Keys |
| Defendant. ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiffs allege in paragraphs 7, 8, 9, and 10 of their Supplemental Complaint that they agreed to assist defendant by finding prospects that would invest in real estate with defendant. Plaintiffs allege in paragraphs 9, 10, 12, and 13 that they introduced defendant to an appropriate investor, CalSTRS/Principal, and that CalSTRS/Principal and defendant formed a joint venture "to fund the development and/or ownership of shopping malls and/or other real estate assets." Plaintiffs allege in paragraph 12 that they are entitled to a finder's fee based on an assurance that they would be paid a finder's fee "in the event that Plaintiffs introduced Urban to one or more investors that funded Urban's proposed developments." Plaintiffs' claim thus depends on CalSTRS/Principal having invested in real estate.

Plaintiffs now attempt to rewrite their pleading and argue that defendant's transaction with CalSTRS/Principal is not a real estate transaction. Plaintiffs' allegations in paragraphs 7, 8, 9, 10, 12, and 13, however, establish that real estate is central to defendant's transaction with CalSTRS/Principal "to fund the development and/or ownership of shopping malls and/or other

real estate assets," upon which plaintiffs base their finder's fee claims. *Thomas v. Daubs*, 291 Ill. App. 3d 682 (5th Dist. 1997), a more recent Illinois decision concerning the scope of the Real Estate License Act, holds that the Act applies to transactions, including sales of shares of a business, if real estate is more than merely incidental to the transaction. The Act accordingly bars plaintiffs' claims because plaintiffs fail to allege that they had a broker's license. Plaintiffs' arguments to avoid application of the Act fail.

I. *THOMAS*, A MORE RECENT DECISION CONCERNING THE SCOPE OF THE ACT, HOLDS THAT THE ACT APPLIES TO TRANSACTIONS, INCLUDING SALES OF SHARES OF A BUSINESS, IF REAL ESTATE IS MORE THAN MERELY INCIDENTAL TO THE TRANSACTION.

Plaintiffs Brief in Opposition cites Illinois cases from 1976, 1979, and 1990 concerning the Act—but ignores *Thomas*, a more recent Illinois decision concerning the scope of the Act.

In *Thomas*, defendants John Daubs and Daubs Landfill, Inc. entered into a contract with Waste Management Professionals, Inc., pursuant to which Mid-American Waste Systems, Inc., purchased shares of Daubs Landfill, Inc. *Thomas*, 291 Ill. App. 3d at 684 (stating that the acquisition was "through a stock transfer or purchase"). Having introduced Mid-American Waste Systems, Inc. to defendants, plaintiffs sought to recover a finder's fee. *Thomas*, 291 Ill. App. 3d at 684-685.

Defendants moved to dismiss "based upon plaintiffs' failure to allege that either one of them held the requisite license necessary to assert a claim for a commission as required by the Act." *Thomas*, 291 Ill. App. 3d at 685. "Plaintiffs responded that the [Real Estate License] Act was inapplicable because the sale here was the sale of 'stock of Daubs Landfill, Inc. and not the sale of real estate,'" *Thomas*, 291 Ill. App. 3d at 685, and "that the Act does not apply to the facts alleged in their amended complaint because the Act specifically enumerates the activities that make one a broker, and all such activities are directed toward real estate, not toward a business."

*Thomas*, 291 Ill. App. 3d at 686. Plaintiffs argued that the sale in question "was the sale of a business, not the sale of real estate." *Thomas*, 291 Ill. App. 3d at 686.

The appellate court rejected this argument and affirmed the dismissal of plaintiffs' claims because "it cannot be said that the land is merely incidental to the sale." *Thomas*, 291 Ill. App. 3d at 686. Although "the law is quite clear in Illinois that a finder involved in the sale of real estate must satisfy the licensing requirements of the Act," *Thomas*, 291 Ill. App. 3d at 690, the court first had to determine whether the Act encompasses the sale of shares of a business involving real estate. The court surveyed the law from both Illinois and other jurisdictions, *Thomas*, 291 Ill. App. 3d at 687-688, then held that "the better approach is to allow an unlicensed broker to collect his fee only when the real estate is incidental to the transaction." *Thomas*, 291 Ill. App. 3d at 688-689. The Act, the court held, "applies to the sale of the business, unless real estate is merely incidental to the sale." *Thomas*, 291 Ill. App. 3d at 689. The court accordingly affirmed the dismissal of plaintiffs' claims, based on their failure to allege that either had a broker's license, because real estate was more than merely incidental to the sale of shares of the business. *Thomas*, 291 Ill. App. 3d at 686-690.

*Thomas* thus holds that the Act applies to transactions, including sales of shares of a business, if real estate is more than merely incidental to the transaction, and bars a claim for a commission if a finder does not allege that it has a broker's license.

## II. PLAINTIFFS' ALLEGATIONS ESTABLISH THAT THE ACT APPLIES AND BARS PLAINTIFFS' CLAIMS.

### A. Plaintiffs' Allegations Establish that Real Estate Is Central—and Certainly More than Incidental—to Defendant's Transaction with CalSTRS/Principal "to Fund the Development and/or Ownership of Shopping Malls and/or Other Real Estate Assets," Upon Which Plaintiffs Base Their Claims.

Plaintiffs seek a finder's fee for introducing defendant to CalSTRS/Principal. Plaintiffs' allegations in paragraphs 7, 8, 9, 10, 12, and 13 of the Supplemental Complaint establish that real

3

estate is central—and certainly more than merely incidental—to defendant's transaction with CalSTRS/Principal.

- Paragraph 7:   Plaintiffs allege that defendant asked plaintiffs "to identify and introduce Urban to institutional and similar *investors that might provide funds for the purchase, development and ownership* by Urban and/or its affiliates *of shopping centers and mixed use real estate developments.*"

- Paragraph 8:   Defendant told plaintiffs that defendant was "seeking *investors to fund the purchase, development and ownership of shopping centers and mixed use real estate properties.*"

- Paragraph 9:   "Plaintiffs jointly utilized their extensive knowledge of the *real estate investment industry* to identify *potential investors meeting Urban's criteria to fund the purchase, development and ownership of shopping centers and mixed use real estate properties.*"

- Paragraph 9:   "Plaintiffs identified a number of potential investors that indicated they might be interested in *funding developments* like those proposed by Urban on terms substantially similar to those identified to Plaintiffs by Urban."

- Paragraph 10:   "Among the potential investors that indicated such interest was California State Teachers' Retirement System ('CalSTRS') and its *real estate portfolio manager*, Principal Financial Group."

- Paragraph 10:   Plaintiffs proposed that plaintiffs, defendant, and CalSTRS/Principal meet "to facilitate direct discussions between them regarding the prospect of *CalSTRS/Principal funding real estate projects.*"

- Paragraph 12:   "Solely in consideration of Urban's assurance that Plaintiff's [sic] would be compensated as the 'finder' in the event that Plaintiffs introduced Urban to one or more *investors that funded Urban's proposed developments*, Plaintiffs jointly scheduled a meeting."

- Paragraph 12:   Plaintiffs "thereafter continued to engage in communications with representatives of Plaintiffs, Urban and CalSTRS/Principal *regarding CalSTRS/Principal providing funds for Urban's proposed real estate developments.*"

- Paragraph 13:   "Plaintiffs' joint effort on behalf of Urban culminated with Urban [sic] and CalSTRS/Principal's formation of a joint venture called UrbanCal LLC, to which CalSTRS/Principal has contributed $200 million and agreed to contribute up to an additional $300 million ('the Joint Venture') *to fund the development and/or ownership of shopping malls and/or other real estate assets.*"

(Supplemental Complaint, ¶¶ 7-10, 12-13 (emphasis added).)

4

Plaintiffs thus allege that defendant sought investors, and plaintiffs identified investors, including CalSTRS/Principal, for the purchase, development and ownership of real estate, based on defendant's assurance that plaintiffs would be paid a finder's fee if plaintiffs introduced defendant to "investors that funded Urban's proposed [real estate] developments." (Supplemental Complaint, ¶¶ 7-10, 12.)

Plaintiffs further allege that their efforts resulted in CalSTRS/Principal contributing money "to fund the development and/or ownership of shopping malls and/or other real estate assets" through a joint venture formed by defendant and CalSTRS/Principal. (Supplemental Complaint, ¶ 13.) Plaintiffs do not allege that they had a broker's license.

Plaintiffs thus claim a finder's fee for introducing defendant to an investor in a transaction "to fund the development and/or ownership of shopping malls and/or other real estate assets." Real estate accordingly is central to defendant's transaction with CalSTRS/Principal "to fund the development and/or ownership of shopping malls and/or other real estate assets," upon which plaintiffs base their claims. The Act thus applies and bars plaintiffs' finder fee claims because they do not allege that they had a broker's license.

### B. Plaintiffs' Allegations Defeat Their Arguments to Avoid Application of the Act.

#### 1. Plaintiffs' allegations expose their flawed assertions about their claims.

##### a. Plaintiffs allege that their claims require, as a condition of recovery, that they introduced defendant to an investor which invested in real estate.

Plaintiffs assert that they "allege no connection to any real estate transaction—ancillary or otherwise—in which the funds provided by CalSTRS/Principal were used." (Brief in Opposition at 10-11.) They also state: "nor are Plaintiffs' claims dependant [sic] upon the use of those funds in any real estate transaction." (Brief in Opposition at 4.) Plaintiffs' allege in paragraph 12, however, that "Plaintiff's [sic] would be compensated as the 'finder' *in the event*

5


*that* Plaintiffs introduced Urban to one or more *investors that funded Urban's proposed developments* (emphasis added)." This allegation—that their claims *require, as a condition of recovery*, that plaintiffs introduced defendant to an investor which invested in real estate assets with defendant ("funded Urban's proposed developments")—eviscerates plaintiffs' assertions that that their claims are not connected to a real estate transaction.[1]

Plaintiffs' assertion that real estate purchases by the joint venture after plaintiffs completed performance of their services "would have been wholly separate and independent from the provision of those services" (Brief in Opposition at 9) similarly fails. *First*, plaintiffs allege that defendant and CalSTRS/Principal would not have entered into a transaction but for plaintiffs' services. *Second*, the real estate transactions also are not "wholly separate and independent" of plaintiffs' services—because plaintiffs' alleged right to compensation depends on the joint venture having made real estate investments ("funded Urban's proposed developments"). *Third*, every finder's services are complete before the prospect introduced by the finder enters into the transaction for which the prospect was introduced.

      **b. Plaintiffs' allegation in paragraph 13 establishes that the relationship between real estate and defendant's transaction with CalSTRS/Principal is not attenuated.**

Plaintiffs' allegation in paragraph 13 that defendant and CalSTRS/Principal entered into a joint venture "to fund the development and/or ownership of shopping malls and/or other real estate assets," makes plaintiffs' assertion that the use of the joint venture funds "is not alleged" (Brief in Opposition at 3-4), at best, dubious. The same allegation in paragraph 13 establishes that defendant does not, as plaintiffs assert, seek to apply the Act to transactions to which real estate has only an attenuated relationship (Brief in Opposition at 1-2).

---

[1] Plaintiffs' assertion that their own allegations about the purpose for which defendant *sought* an investor are surplusage is curious but irrelevant. *See* Brief in Opposition at 4 and Supplemental Complaint, ¶¶ 7-8.

6

Plaintiffs' assertion that their allegation in paragraph 13 that defendant and CalSTRS/Principal established the joint venture "to fund the development and/or ownership of shopping malls and/or other real estate assets" "does not necessarily equate with the purchase of an interest in real estate" (Brief in Opposition at 4-5) is a failed attempt to play with words. *First*, plaintiffs' allegations in paragraphs 7, 8, and 9 repeatedly allege that defendant sought, and plaintiffs identified, investors to fund "the purchase, development and ownership of real estate." *Second*, the definition of a "broker" in Section 1-10 of the Act (that includes finders) is not limited to finders of prospects to purchase real estate. 225 ILCS 454/1-10 (defining a broker as including one who "either directly or indirectly: ... (8) [a]ssists or directs in procuring or referring of prospects, intended to result in the sale, exchange, lease, or rental of real estate"). *Third*, the holding in *Thomas* that the Act applies to transactions to which real estate is more than merely incidental establishes that the Act is not limited to purchases of real estate.

## 2. The application of *Thomas* defeats plaintiffs' legal arguments.

*Thomas* holds that the Act bars an unlicensed finder's claim based on the introduction of a prospect that purchased shares of a business to which real estate was more than merely incidental, because the Act applies to transactions, including sales of shares of a business, if real estate is more than merely incidental to the transaction. *Thomas*, 291 Ill. App. 3d at 686-690.

Thomas thereby establishes that a "prospect," as used in Section 1-10 of the Act, 225 ILCS 454/1-10, is not limited to a person who directly purchases real estate, as plaintiffs assert, but also includes a prospect that invests in a joint venture formed "to fund the development and/or ownership of shopping malls and/or other real estate assets." Plaintiffs' citations to references in the Act mentioning "prospective lessees," "prospective purchasers," and "prospective buyers or tenants" thus have no relevance.

7

Plaintiffs' citations to (1) the generally stated legislative intent of the Act, (2) the Illinois Administrative Code's educational requirements for brokers, (3) the definition of an interest in a limited liability company as being personal property, and (4) cases decided based on the law of other jurisdictions, including *Turner Holdings, Inc. v. Howard Miller Clock Co.*, 657 F. Supp. 1370 (W.D. Mich. 1987) (Michigan law), and *Prudential Securities Inc. v. Norcom Development, Inc.*, 1999 WL 294806 (S.D.N.Y. May 11, 1999) (North Carolina law), also provide no basis to avoid the holding of *Thomas*.

### 3. The Illinois cases upon which plaintiffs rely do not support a different conclusion.

In *People ex rel. Dept. of Registration and Education v. D.R.G., Inc.*, 62 Ill. 2d 401 (1976), the court followed long established precedent that holds that a certificate of purchase for delinquent real estate—which through the institution of subsequent legal proceedings may lead to the issuance of an order directing the issuance of a tax deed, which in turn may ultimately lead to the acquisition of title to real estate—is not an interest in real estate. *D.R.G., Inc.*, 62 Ill. 2d at 403-406 (also holding that acquisition does not constitute "buying *and* selling" under a provision of the Act). The holding that the acquisition of a certificate of purchase for delinquent real estate is not the purchase of real estate provides no basis to avoid the conclusion that the Act applies to a transaction to form a joint venture "to fund the development and/or ownership of shopping malls and/or other real estate assets."

In *J.H. Chapman Group, Ltd. v. Pita Baking Co.*, 205 Ill. App. 3d 1031, 1032-1034 (1st Dist. 1990), the court held that the Act did not apply to a unlicensed broker's claim based on Pita Baking Co.'s sale of a business to DCA Food Industries, Inc. "that included no real estate interest," but which was contingent on DCA separately entering into a lease with a non-party landlord. *J.H. Chapman Group, Ltd.* fails to support plaintiffs' argument that the Act does not

8

apply to plaintiffs' claims based on defendant's transaction with CalSTRS/Principal. *First*, in defendant's transaction with CalSTRS/Principal "to fund the development and/or ownership of shopping malls and/or other real estate assets," *both* defendant and CalSTRS/Principal (through their joint venture) entered into a transaction "intended to result in the sale, exchange, lease, or rental of real estate." On the other hand, in Pita's transaction with DCA, only DCA entered into a transaction "intended to result in the sale, exchange, lease, or rental of real estate." *Second*, in *J.H. Chapman Group, Ltd.*, real estate was merely incidental to the transaction. *J.H. Chapman Group, Ltd.* thus fails to support plaintiffs' argument that the Act does not apply to plaintiffs' claims based on defendant's transaction with CalSTRS/Principal. To the extent that *J.H. Chapman Group, Ltd.* somehow is understood as inconsistent with *Thomas*, moreover, *Thomas* as the more recent case should be followed.

In *Sunny Ridge Realty and Ins., Inc. v. Williamson*, 74 Ill. App. 3d 481, 484-486 (2d Dist. 1979), the court held that a business that provides promotional videotapes and other supplementary services to licensed brokers does not itself act as a broker. The court broadly noted "that a person who merely finds a purchaser for real property in return for a fee or commission is a 'broker'" under the Act and that "the essential feature of the broker's employment is in bringing the buyer and seller together for the purpose of effecting a sale." *Sunny Ridge Realty and Ins., Inc.*, 74 Ill. App. 3d at 484. The court, however, made these general statements to explain why providing supplementary services to brokers—while interacting with neither buyers, nor sellers, nor prospective buyers or sellers—does not make one a broker under the Act—rather than to precisely define who has acted as a broker under the Act. *Sunny Ridge Realty and Ins., Inc.*, 74 Ill. App. 3d at 484-486. The Act indeed defines a "broker" more broadly, and includes one who "either directly or indirectly: ... (8) [a]ssists or directs in

9

procuring or referring of prospects, intended to result in the sale, exchange, lease, or rental of real estate." 225 ILCS 454/1-10. Plaintiffs' allegations, moreover, establish that they acted as a broker.

Plaintiffs allege in paragraphs 9 and 13 that they "utilized their extensive knowledge ... to identify potential investors meeting Urban's criteria to fund the purchase, development and ownership of shopping centers and mixed use real estate properties," and that their efforts "culminated with Urban [sic] and CalSTRS/Principal's formation of a joint venture called UrbanCal LLC, to which CalSTRS/Principal has contributed $200 million ... to fund the development and/or ownership of shopping malls and/or other real estate assets." Plaintiffs thus have alleged that they procured at least one "prospect[], intended to result in the sale ... of real estate," by identifying CalSTRS/Principal as an investor in a joint venture "to fund the development and/or ownership of shopping malls and/or other real estate assets."

The Act thus applies and bars plaintiffs' claims to recover a finder's fee because plaintiffs do not allege that they had an Illinois real estate broker's license.

Respectfully submitted,

Urban Retail Properties, LLC

By:   /s/ David M. Simon
      One of its attorneys

H. Roderic Heard (Tel. No. (312) 201-2623) (Reg. No. 1167170)
David M. Simon (Reg. No. 6201941) (Tel. No. (312) 201-2618)
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Chicago, Illinois 60606